UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JESSE M. CUNNINGHAM, III,

            Plaintiff,

v.                                                                            Case No. 23-cv-337-pp

ALESHA BRERETON, JUDGE JODI L. MEIER,
MICHAEL MASNICA and KENOSHA COUNTY
DEPARTMENT OF CHILDREN FAMILY SERVICES,

            Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Jesse M. Cunningham, III, who is incarcerated at Prairie du Chien Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional right as a father for care or custody of his infant daughter. On August 9, 2023, he filed an amended complaint. Dkt. No. 13. Because the court had not yet screened the original complaint when he filed the amended complaint, this decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his amended complaint, dkt. no. 13.

**I.**     **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On March 16, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $20.37. Dkt. No. 5. The court received that fee on July 27, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended

complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The amended complaint names as defendants Alesha Brereton,[1] Judge Jodi L. Meier, Michael Masnica and the Kenosha County Department of Children and Family Services (KCDCFS). Dkt. No. 13 at 1–2. The amended

---

[1] The plaintiff's filings use various spellings of this defendant's first and last names. The court will use the spelling listed in the caption of the amended complaint.

complaint alleges that the defendants "work together as colleague[s]." Id. at 2. The plaintiff alleges that on September 14, 2020, his daughter, whom the court will call "J.C.," was admitted to the hospital without his knowledge based on "false allegations of abuse and the mother mental health." Id. The plaintiff says that Brereton, who is a case worker with KCDCFS, "preceded over the case on 9-17-20 which she filed a Petition." Id. The plaintiff alleges that he never was notified of the hospitalization, the KCDCFS involvement "or Court." Id.

The plaintiff alleges that on October 8, 2020, the petition was heard in front of Judge Meier. Id. at 3. Judge Meier assigned Masnica to the case as guardian *ad litem* of J.C., allegedly without the plaintiff's knowledge. Id. Nor was the plaintiff informed of additional court proceedings that occurred November 2020 through January 2021. Id. The plaintiff cites and quotes at length New Hampshire Statute §170-C-7, which involves the notice that must be given "to parents whose parental rights may be terminated." Id. He says that for five months, the court "disregarded to do" what that statute required and "acted in secret to proceed with a T.P.R. [Termination of Parental Rights]." Id. The plaintiff says that if he "would have known about false felony allegations of abuse" or "about court proceeding about [his] daughter [he] could have prevented [his] incarceration and T.P.R." Id. at 3–4. The plaintiff says he "had domestic issues with caseworker" (who the court presumes is Brereton), but that "she"—possibly Judge Meier—"refused to replace" her "[e]ven after she lied under oath three times." Id. at 4. He claims that the court deprived him of his

"due process rights of parenting" and terminated his parental rights "due to incarceration," which he says "is unethical and illegal." Id.

The plaintiff claims that Brereton, Judge Meier and Masnica were "partial toward" J.C.'s mother "as the father had rights as well," and alleges that they were "unmindful" of his constitutional rights as a parent. Id. He claims that it "was never in the court best interest to unify the [A]frican [A]merican father with his daughter." Id. He reiterates that the defendants "acted and worked in secret . . . to proceed without the father knowing of such important and critical matters [w]hich was done with bias, prejudice." Id. He says Judge Meier disregarded her duty, which "was to inforce [*sic*] the constitution not to be Loyal to her colleague." Id. The plaintiff asserts that he could have "prevent[ed] being in prison" if he had known "before time of false felony allegation and Petitions of [his] Child." Id.

On July 20, 2023—before it received the amended complaint—the court received from the plaintiff a five-page request to add Michael J. Masnica as a defendant. Dkt. No. 12. This request is moot because the plaintiff named Masnica as a defendant in the amended complaint, but the court will review this document because it provides more background for his claims. He alleges that his child was admitted to the hospital because of "the mother," '[f]or reasons that [he] and her other child's father cause harm to a 3 month old baby," an event that supposedly happened around September 14, 2020. Id. at 1. He asserted that KCDCFS took his daughter into its custody without making him aware of the mother's serious (and, he says, false) allegations of felonies.

Id. at 1–2. The plaintiff says that if there had been a child abuse investigation, he would have known and he could have "prevented the mother in making future allegations which sent me to prison." Id. at 2.

The plaintiff says that on September 17, 2020, "a chips petition was filed," but the plaintiff was not made aware of it.[2] Id. at 2. The plaintiff says that he was not incarcerated at the time and was "fully stable with custody of other children." Id. The plaintiff says that as the father listed on the birth certificate, "the child"—presumably his daughter—has his last name, and asserts that he had a right to know that the child was taken and to know of any CHIPS petition and future court dates. Id. The plaintiff asserts that there was a court date on October 8, 2020 that "proceeded without [his] knowledge and opportunity for custody." Id. He asserts that the matter was scheduled for trial on November 9, 2020, and that he wasn't made aware of that fact—he received no letter or phone call. Id. He says that for five months, Masnica made no attempt to give him notice or unify him with his child. Id.

The plaintiff explains that due to past experience, he was not in communication with "the mother." Id. at 3. He alleges that in November 2020, he "became aware" that the State had taken custody of his daughter, "without full explanation from the mother." Id. He contacted KCDCFS, which told him that he "had to take some programs;" he says this was "absurd" to him because

---

[2] A CHIPS petition concerns a child in need of protection and/or services. See Bond v. Sutton, Case No. 19-CV-29-JPS, 2019 WL 581797, at *2 (E.D. Wis. Feb. 13, 2019) (citing Wis. Stat. §48, *et seq.*). The court can infer that this is the petition that Brereton filed. Dkt. No. 13 at 2.

it was hard to find programs at that time due to COVID. Id. He says that around the time he found a class to attend, the child was given back to the mother—in December 2020. Id. He claims Masnica "acknowledged the father [only] when it was about taking his parental rights away," which he asserts violated his civil and constitutional rights as J.C.'s father. Id. He says this was done strategically to keep him away from his daughter because he is an African American male. Id.

The plaintiff asserts that on January 20, 2021, his daughter was "redetained," again, without his knowledge. Id. at 4. He states, "Also a scheduled disposition on 12-8-20;" it is not clear whether he means there was a court hearing on December 8, 2020 of which he was not notified. Id. He repeats that again, the agency and the court ignored his civil and constitutional rights. Id. He indicates that he was not incarcerated for the first five months of "these proceeding[s]," and that he could have prevented his incarceration if he'd known about the mother's false allegations and his child's situation. Id.

The plaintiff asserts that KCDCFS violated his "Civil and Constitutional Rights that are provided by Wisconsin Statue's [*sic*]" by failing to inform him that it had taken custody of his daughter. Id. at 4. He does not cite a specific Wisconsin law but says that "Wis. Statue [*sic*] requires the circuit courts to orally inform the parents of any grounds for T.P.R." Id. The plaintiff asserts that the unidentified Wisconsin statute requires that "any written order which

7

places a child outside the home shall notify the parents of the information specified under (sub1)." Id.

The plaintiff says that the defendants "took so much from [him] because of there [*sic*] Bias, negligence," including missing his new-born baby's development for three years, "not counting other kids and grandchildren." Dkt. No. 13 at 5. He says he "lost [his] home, car, motorcycle, truck[,] [m]emorabilia of [his] dead wife, son, aunt, grandmother[,] grandfather[,] [m]aterial wealth, [m]aterial things." Id. He says he was "put in prison twice for the same weapon," but he does not elaborate. Id. He mentions the mental and physical damage of his children. Id. The plaintiff claims that his "son was killed by police. Now the police enter are [*sic*] home frighted [*sic*] us because of the judge negli[g]ence." Id. He says he was denied the ability to keep his family safe. Id. The plaintiff reiterates that he "could have prevented this" and that he "want[s] custody of [his] kids." Id. He also says that he wants "to be off probation." Id. The plaintiff seeks to "[r]eplace what [he] lost" and "to be rewarded financially." Id.

   C.   Analysis

The plaintiff's allegations are vague and difficult to follow. But the court infers that he seeks to proceed on a claim that, in her role as a case worker for KCDCFS, Brereton violated his rights to due process of the law under the Fourteenth Amendment by filing a CHIPS petition regarding his daughter based on false allegations made by the daughter's mother—who the plaintiff says is mentally ill—and without notifying him.

The Due Process Clause of the Fourteenth Amendment protects against "deprivations of life, liberty, and property." Isby v. Brown, 856 F.3d 508, 524 (7th Cir. 2017). Under the Fourteenth Amendment, parents have a substantive due process "right to 'familial integrity,' . . ., or 'familial relations,' . . ." includes a parent's interest in the 'care, custody, and management' of his children, . . ." Milchtein v. Milwaukee County, 42 F.4th 814, 821 (7th Cir. 2022) (citations omitted); see also Booker v. Gotz, No. 22-C-1567, 2023 WL 2992681, at *2 (E.D. Wis. Apr. 18, 2023) (quoting Terry v. Richardson, 346 F.3d 781, 784 (7th Cir. 2003)) (describing the "right to the 'care, custody, and control' of their offspring" that noncustodial parents retain). The Due Process Clause protects parents from governmental interference in "'familial relationships unless the government adheres to the requirements of procedural and substantive due process.'" Booker, 2023 WL 2992681, at *2 (quoting Croft v. Westmoreland Cty. Children and Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997)).

The amended complaint alleges that on September 17, 2020, Brereton filed a CHIPS petition about J.C., which led to his daughter being removed from her home and taken into state custody. He says Brereton did not inform the plaintiff about his daughter's custody, hospitalization or court proceedings. Nor did Brereton inform the plaintiff that his daughter was taken into state custody based on false allegations that the plaintiff had harmed his daughter. The plaintiff, regardless of the fact that he was J.C.'s noncustodial parent, had a right to the care and custody of his infant daughter. The amended complaint alleges that Brereton interfered with that right by filing a petition to have J.C.

removed from her home without proper cause and by keeping the plaintiff in the dark about his daughter's wellbeing. The plaintiff says that Brereton's actions kept him from making informed decisions as J.C.'s father. Although the details of the claim are not clear, the court finds that at this early stage of the litigation, the allegations are sufficient to state a claim under the Fourteenth Amendment Due Process Clause.

The plaintiff alleges that guardian *ad litem* Masnica was negligent and failed to tell the plaintiff about the court proceedings involving the custody of his daughter. He claims that Masnica violated his rights as a parent, similar to his due-process claim against Brereton. But as this court recently has explained, guardians *ad litem* are not state actors and cannot be sued under §1983. See Huiras v. Cafferty, No. 22-cv-575-pp, 2022 WL 16835779, at *9 (E.D. Wis. Nov. 9, 2022), aff'd as modified, No. 22-3081, 2023 WL 4842323 (7th Cir. July 28, 2023) (citing Bach v. Milwaukee Cty. Circuit Court, 565 F. App'x 531, 532 (7th Cir. 2014) ("[T]he guardian *ad litem*, is not a state actor subject to § 1983."); and Nelson v. Kujawa, No. 07-C-741, 2008 WL 2401260, at *2 (E.D. Wis. June 11, 2008) ("[S]tate-appointed guardians ad litem are *not* state actors subject to liability under 42 U.S.C. § 1983")). This court further noted that, "[g]uardians *ad litem* also are 'absolutely immune from liability for damages when they act at the court's discretion.'" Id. (quoting Cooney v. Rossiter, 583 F.3d 967, 970 (7th Cir. 2009)). The plaintiff says that Judge Meier appointed Masnica as guardian *ad litem* for J.C., which means that

Masnica is absolutely immune from this suit for damages. The court will dismiss Masnica from the lawsuit.

The plaintiff also names Judge Meier as a defendant. He claims that Judge Meier violated his rights by failing to inform him of court proceedings and by working "in secret" with Brereton and Masnica to terminate his parental rights. The plaintiff cannot proceed against Judge Meier because she is entitled to absolute judicial immunity for her judicial actions. Brokaw v. Mercer County, 235 F.3d 1000, 1015 (7th Cir. 2000) (citing Mireles v. Waco, 502 U.S. 9, 10 (1991)). The doctrine of judicial immunity provides that "judges are not liable in civil actions for their judicial acts unless they have acted in the clear absence of jurisdiction." Id. (citing Stump v. Sparkman, 435 U.S. 349, 356–57 (1978)). A judge retains absolute immunity even if her challenged action "was in error, was done maliciously, was in excess of h[er] authority, and even if h[er] exercise of authority is flawed by the commission of grave procedural errors." Id. (internal citation omitted).

The plaintiff has not contested Judge Meier's jurisdiction or ability to oversee the case involving his parental rights. He instead takes issue with her decisions and actions in that litigation, during which he claims that she favored her "colleague," Brereton. The plaintiff also claims that Judge Meier worked "in secret" with Brereton and Masnica to deprive him of his rights. But he does not explain what he means or what causes him to believe that the three were working together to deprive him of his rights. His mere allegation that the judge worked in concert with state employees cannot overcome judicial

11
Case 2:23-cv-00337-PP   Filed 09/11/23   Page 11 of 19   Document 14

immunity. Id. at 1015–16 (citing John v. Barron, 897 F.2d 1387, 1393 (7th Cir. 1990) (mere allegations of conspiracy insufficient to overcome judicial immunity). The court will dismiss Judge Meier from the lawsuit.

The plaintiff seeks to proceed against KCDCFS. But as the court explained in the order screening the plaintiff's complaint in another case, §1983 permits suit only against a "person" who violated his federal rights while acting under color of state law. See Cunningham v. Rowley, Case No. 23-cv-291-pp (E.D. Wis.), Dkt. No. 8 at 15. Like the Kenosha County District Attorney's Office and Police Department, the KCDCFS is not a person; it is a department or division of Kenosha County. See Children & Family Services, https://www.kenoshacounty.org/241/Children-Family-Services (last visited Aug. 31, 2023).

Although the amended complaint does not name Kenosha County as a defendant, the court could construe the plaintiff's claim against KCDCFS as if he had brought it against Kenosha County. But a local government like Kenosha County "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). A municipality may "be held liable under § 1983 only for its own violations of federal law." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To show municipal liability, the plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority

[that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

The amended complaint does not allege that the plaintiff suffered an injury because of an unconstitutional policy or custom of Kenosha County. The amended complaint alleges only that Brereton, an employee of KCDCFS, filed a CHIPS petition based on false allegations made by J.C.'s mother that the plaintiff abused his daughter, requiring her hospitalization. His allegations suggest that, rather than following state law or policy, Brereton *violated* state law or policy by failing to notify him about J.C.'s court proceedings. Those allegations are not sufficient to state a basis for liability against Kenosha County. The court will dismiss KCDCFS as a defendant and will not allow the plaintiff to proceed against KCDCFS or Kenosha County.

The plaintiff suggests that some of the defendants treated him differently because he is African American. The plaintiff twice alleges that, "It was never in G.A.L. and D.C.F.S. best interest to unify the African American Male father with his child." Dkt. No. 12 at 3; Dkt. No. 13 at 4 ("It was never in the court best interest to unify the [A]frican [A]merican father with his daughter."). The

Equal Protection Clause of the Fourteenth Amendment protects against arbitrary discrimination "unrelated to the character of the activity allegedly discriminated against." Reed v. Faulkner, 842 F.2d 960, 962 (7th Cir. 1988). A plaintiff may state a claim under the Equal Protection Clause if he alleges that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor." Lisle v. Welborn, 933 F.3d 705, 719–20 (7th Cir. 2019).

The court finds that the plaintiff's allegations regarding discrimination based on his race are insufficient to state a claim. Although he alleges that Judge Meier or Masnica took his race into account when adjudicating his parental rights, he has not alleged that they terminated his parental rights or treated him differently *because* he is African American. His allegations suggest that the plaintiff believes the defendants harbored a racial bias, but he does not allege that (or how) they acted on that bias when handling his state case. The plaintiff may not proceed on a claim based only on his speculation about the defendants' prejudices. The court already has indicated that it also is not allowing the plaintiff to proceed against Judge Meier or Masnica for the reasons explained above. It is possible the plaintiff could state a claim under the Equal Protection Clause against Brereton with additional information, but the court will not allow the plaintiff to proceed on a claim under the Equal Protection Claim against Judge Meier or Masnica based on the limited allegations in his amended complaint.

The plaintiff asserts that the defendants violated his rights under state law, but he cites only a New Hampshire statute. Dkt. No. 13 at 3 (citing N.H. Rev. STAT §170-C-7). This statute does not apply in Wisconsin, where the alleged events took place.

In his request to add Masnica as a defendant, the plaintiff cites "sub1" and recites what the court has determined is language from Wis. Stat. §48.356, which provides that "any written order which places a child . . . outside the home or denies visitation under sub. (1) shall notify the parent or parents . . . of the information specified under sub. (1)." Wis. Stat. §48.356(2). This statute is labeled "Duty of court to warn" and describes a state circuit court's obligation to warn a parent who appears in state court "of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child . . . to be returned to the home or for the parent to be granted visitation." Wis. Stat. §48.356(1).

The court infers that the plaintiff believes Judge Meier (or Masnica as an agent of the court) violated this statute by failing to inform him about court proceedings regarding the termination of his parental rights. As the court explained above, the plaintiff cannot proceed under §1983 against Judge Meier or Masnica because they have absolute immunity from this suit. Even if he could proceed against those defendants, a violation of a state law alone does not infringe a constitutional right and does not provide a basis for a claim under §1983. See Swarthout v. Cooke, 562 U.S. 216, 221–22 (2011); Tucker v. City of Chicago, 907 F.3d 487, 494–95 (7th Cir. 2018). If the plaintiff believes

his rights under state law have been violated, he may seek appropriate relief in state court. But it is not grounds for a claim in federal court.

As a final note, the plaintiff seeks monetary damages. But he also asks the court to return custody of his children to him. As the court explained in the order screening the complaint in the plaintiff's other recent case, this federal court does not have the authority to order the State of Wisconsin to return custody of the plaintiff's children to him. See Case No. 23-cv-291-pp, Dkt. No. 8 at 17–18. The plaintiff also says that he wants to be off probation, and he appears to contest his criminal charges. But the proper avenue for him to contest his state convictions, his probation or the conditions of his probation is a petition for a writ of *habeas corpus*—not a lawsuit under §1983. See Heck v. Humphrey, 512 U.S. 477, 481 (1994); Tobey v. Chibucos, 890 F.3d 634, 651 (7th Cir. 2018).

To summarize: the court will allow the plaintiff to proceed only on a claim against Alesha Brereton under the Due Process Clause of the Fourteenth Amendment. He may proceed on this claim on his request for damages only and may not seek any other relief. The plaintiff may not proceed on any claim against Judge Meier, Michael Masnica, KCDCFS or Kenosha County, and he may not proceed on a claim under state law.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's request to add Michael J. Masnica as a defendant. Dkt. No. 12.

The court **DISMISSES** defendants Judge Jodi L. Meier, Michael J. Masnica and Kenosha County Department of Children Family Services (KCDCFS).

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint (Dkt. No. 13) and this order on Alesha Brereton at the Kenosha County Department of Children & Family Services under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** the defendant to file a responsive pleading to the amended complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$329.63** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Prairie du Chien Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[3] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 11th day of September, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**